MATILDA G. WEBSTER & another vs. EVERETT WEBSTER
& others.

A testator, having a wife and three sons, G., E. and W., and personal property hardly suffi-
cient to pay his debts, made a will, in which, after provisions for the widow, he gave to
W. certain real estate, with remainder to his children; to G. certain real estate and per-
sonal property; and to G., in trust for E. and his children, other real estate and any resi-
due of personal property. The value of these gifts, if the testator had died immediately,
would have been respectively $5700, $8700 and $3700. He died ten years afterwards,
having meanwhile sold portions of the real estate. When he died, W. and G. were child-
less, and E. had three children, born since the making of the will. The value of the
whole estate remained about the same. *Held*, that so much of the proceeds of the real
estate sold as was not needed to satisfy the rights of the widow, who waived, under the
Gen. Sts. *c*. 92, the provisions made for her in the will, was to be added to the trust fund
for the benefit of E. and his children, although it increased the amount of the fund to
$11,000, reducing the gift to W. from $5700 to $3700, and the gift to G. from $8700 to
$50.

BILL IN EQUITY by the executors of the will of Nathan Web-
ster, praying for instructions. The case, as it appeared by the
bill and answers, on which it was reserved by *Ames*, J., for the
determination of the full court, was as follows:

Nathan Webster, a resident of Haverhill, made the will March
14, 1856, and died October 19, 1866, leaving a widow, Matilda
G. Webster; three sons, namely, Gardner, Winslow and Everett
Webster; and three grandchildren, issue of Everett, namely,
Mary, Ellen and William Webster, aged respectively eight years,
five years and one year. The will was proved and allowed; and
on March 20, 1867, the executors named therein, namely, the
widow and Gardner Webster, (of whom the testator requested
that no bonds should be required,) were duly appointed and
assumed the trust. The value of the estate, as shown by the
inventory filed by them, was about $19,500, of which $7500 was
appraised on real estate, and $12,000 on personal property.
Within the time limited by the Gen. Sts. *c*. 92, the widow
waived the provisions of the will, and claimed her distributive
share of the estate, under the statute.

At the date of the will, the testator's estate was of nearly the
same value as when he died; but the proportions of real estate
and personal property were very different. The bulk of it con-

sisted of real estate; and the personal property was then barely sufficient to pay the debts. The testator had made advancements to Everett and Winslow, for which he held their notes; but he never made any advancement to Gardner.

The will first gave some furniture and other personal property, and the use, income and improvement of all the real estate, to the widow for her life. It then gave to Everett and Winslow the amounts advanced to them. Then, subject to the widow's life interest in the real estate, it gave the rest of the estate as follows: 1. To Winslow, certain real estate for his life, with the remainder to his children, or if he should die without children, then to Gardner or his heirs. 2. To Gardner, other real estate in trust to apply the income thereof from time to time at his discretion to the support of Everett, and on Everett's death to divide the fund among Everett's children upon their coming of full age, if he should leave children; or, if Everett should die without children, then to divide the income between himself and Winslow during their joint lives, and on Winslow's death pay one half the fund to Winslow's children, if he should leave children, or, if Winslow should not leave children then the whole fund to go to Gardner and his heirs. 3. Certain real estate and half of a pew and some furniture to Gardner personally, said real estate to " stand holden for the faithful discharge of the trust I have given him to discharge, to take care of the land, houses and money for the benefit of Everett and his children." 4. It directed the executors to reduce to money all the personal property not given as above to the widow or Gardner, and pay the testator's debts, " and, if any-thing remain after that, to pay the same to Gardner Webster to be put at interest with the income from the real estate given Gardner Webster in trust for the benefit of Everett and his children," and, in case it should be insufficient to pay the debts, then " Gardner's property to be holden to pay the same."

Estimating the value at the time of the making of the will of the various portions of the estate thus disposed of, by the appraisement in the inventory of such portions as the testator continued to hold at the time of his death, and by computing the money proceeds of such portions as he sold between the date of

the will and his death, the distribution of the estate, if the testator had died immediately after he made the will, would have been as follows : 1. The value of the gift of real estate to Winslow, about $5700.    2. The value of the gift to Gardner in trust for Everett and his children, about $3700.    3. The value of the gift to Gardner himself, about $8700.

But, by reason of sales of a great part of the real estate by the testator between the date of the will and his death, if the balance of the personal property, after satisfying the specific bequests and setting off to the widow her distributive share under the Gen. Sts. *c.* 92, should be added to the trust fund for the benefit of Everett and his children, these proportions would be altered thus : 1. The value of the gift of real estate to Winslow, about $3700.    2. The value of the gift to Gardner in trust for Everett and his children, about $11,000.    3. The value of the gift to Gardner himself, about $50.

The prayer of the bill was for instructions, 1. " Whether the proceeds of the sales of the real estate, sold as above described since the making of the will, are to be distributed, held and applied as the said real estate would have been held, or are to be paid over to Gardner Webster and added by him to the trust fund left by the will for the benefit of Everett Webster and his children, or are to be distributed among the heirs of said testator." 2. " In what manner and in what proportion shall the respective devisees and legatees contribute to any whose estate has been taken by the widow in pursuance of her rights at law."

Winslow Webster and Everett Webster, and the children of Everett by a guardian *ad litem*, answered submitting their rights to the judgment of the court.

*S. Lincoln, Jr.*, for Gardner Webster.    The intention of the testator will govern the construction of the will ; and the law will incline to gather it from the general scheme, so as to give effect to it as a whole, and not enforce particular provisions, or construe words according to their technical meaning, if the result obviously and substantially defeats the testator's design.    *Foote, appellant*, 22 Pick. 299.    *Brimmer* v. *Sohier*, 1 Cush. 118.    *Cook* v. *Holmes*, 11 Mass. 528.

The testator's design at the time of making this will was evidently to provide suitably for his wife; to make no provision of value for Everett personally, further than to release him from the payment of notes given for advancements; but to leave a small property in trust for his children; to make suitable provision for Winslow, to whom advancements had also been made; and to leave a fair portion of his property to Gardner, who had not received advancements. And it appears that he reposed special confidence in Gardner, in that he appointed him alone of the sons joint executor of the will, and also trustee of the property devised for the benefit of Everett and his children. The language relating to the disposal of the personal estate shows that it was not his intention to add any considerable sum to the property previously devised in trust for Everett's children. The testator obviously did not contemplate dying possessed of a large amount of stocks, securities and moneys; but on the contrary was doubtful whether all his personal estate would pay his debts, and charged Gardner's portion with a probable deficit. To bind his scheme of distribution together, he directed Gardner's personal share to be held responsible for the trust fund devised to him for the benefit of Everett's children.

Subsequently however he sold all the real estate devised to Gardner, and a considerable portion of that devised to Winslow; and a will, which formerly disposed of little else than real estate, became in great part a will of personal property. An alienation prior to the testator's death of real estate devised is ordinarily held to be a revocation of the will *pro tanto;* and the reason is, that it is held to imply a change in his intention. He is presumed to intend and desire such an alteration. But Nathan Webster could not have intended to revoke the devises to Gardner and Winslow. Had such been his design, his natural course would have been to make a new will and avoid all uncertainties; and not destroy and confuse the entire system of the will already made. It is hardly conceivable that he should have desired and intended to deprive Gardner of all but the accidental benefits under his will, if he at the same time retained such confidence in him as to nominate him his executor and trustee for his brother's children, in the one case

exempting him from giving bond, and in the other without committing to him the property which was to insure his faithful administration of the trust. It is equally improbable that he desired so to reduce his wife's share under his will as to oblige her to waive the provisions of it in order to obtain adequate support.

The principle to govern the construction of such a will is as follows : If the testator, before his death, disposes of so large a part of the real estate or other devised property, as to render it substantially impossible to carry into effect the provisions of the will; or if, the devises being part of a general scheme, the same is thereby defeated; or if, by following the literal provisions of the will, the result is to make in effect a new will; such alienation of estate will be held to be not merely a revocation of special devises, but of all those parts of the will which are embraced in the general scheme. *In re Cooper's estate*, 4 Penn. State, 88. *Harris* v. *Clark*, 3 Selden, 242. In such event, the court will so construe the will, and direct such a distribution of the estate, as will most nearly follow the intention of the testator; or will declare the testator intestate as to the property involved in the general scheme.

*J. A. Gillis*, for Everett Webster's children.

GRAY, J. The general rule is well settled, that a sale of real estate by a testator after making his will operates as a revocation to the extent of the estate sold only. *Hawes* v. *Humphrey*, 9 Pick. 350. *Clark* v. *Packard*, 9 Gray, 417. *Carter* v. *Thomas*, 4 Greenl. 341.

In the present case, it is manifest from the will itself that the testator intended that such share as Everett and his children should take should be put in trust, to be applied, at the discretion of the trustee, for the benefit of Everett during his life, and after his death to be transferred to his children outright on their coming of age. This intent would be defeated by declaring him wholly intestate.

If we could indulge in conjectures, we might infer that, in the period of ten years that intervened between the making of the will and his death, he deliberately concluded that, as his other sons had no children, the provision made for the children of Everett should be increased.

But however that may be, we are all of opinion that there is nothing in the acts of the testator since the execution of the will, from which we can, consistently with the rules of law, presume an intention to revoke his will in any respect in which it purports by its terms to dispose of his property in the condition in which he left it at his death.

This case differs from those in which the subsequent sale by the testator has been of substantially his whole estate, making it impossible to give effect to the dispositions of his will; as in *Cooper's estate*, 4 Penn. State, 88 ; or in which material parts of the general scheme of the testator have been held illegal and void, and therefore the whole scheme has been declared invalid ; as in *Harris* v. *Clark*, 3 Selden, 242, and *Sears* v. *Putnam*, 102 Mass. 5.

It is admitted by the parties claiming under the will, that the residuary legatees are not entitled to contribution from the specific devisees for that part of the estate which has been taken by the widow, waiving the provisions of the will, and claiming her legal rights. See *Blaney* v. *Blaney*, 1 Cush. 107.

The result is, that so much of the proceeds of the real estate sold by the testator since the making of the will, as is not needed to satisfy the rights of the widow, is to be held by the plaintiffs in trust for Everett and his children, according to the directions of the will.                                       *Decree accordingly.*