FIDELITY NATIONAL BANK & TRUST COMPANY v. GEORGE S. HOVEY, Executor of Last Will of JOHN JOSEPH GRIER, and Trustee of Residuary Estate of said GRIER, Appellant.—5 S. W. (2d) 437.

Division One, March 3, 1928.

194

R. E. Ball and *Langworthy, Spencer & Terrell* for appellant.

*Johnson, Lucas & Graves* for respondent.

SEDDON, C.—Plaintiff (respondent here), Fidelity National Bank & Trust Company, as the successor in name and in fact of the Fidelity Trust Company, and acting in the capacity of trustee for Mary Loretta Murphy, a beneficiary under the last will and testament of John Joseph Grier, deceased, by testamentary appointment of said testator, commenced the instant action in the Circuit Court of Jackson County, Missouri, at Kansas City, seeking a judgment against the defendant (appellant here), George S. Hovey, who is the duly appointed, acting and qualified executor of said last will of John Joseph Grier, deceased, and who is named in said will as the trustee of the testator's residuary estate, for the pecuniary value of thirty-eight shares of the capital stock of the Fidelity Trust Company, a banking corporation organized under the laws of this State, payable out of, and from, the residuary funds and estate of the testator. A similar claim, in the nature of a motion for an order upon the defendant executor directing him to pay to the plaintiff trustee herein, out of the residuary funds of said Grier estate, the pecuniary value of thirty-eight shares of the capital stock of said Fidelity Trust Company, was filed by the plaintiff trustee in the Probate Court of Jackson County in the matter of the estate of John Joseph Grier, deceased, which estate was then being administered in said probate court. Coming on for hearing in the Probate Court of Jackson County, the said motion was denied and overruled by said probate court, and an appeal from the order of the probate court, overruling and denying said motion, was taken by said Fidelity National Bank & Trust Company, trustee for Mary Loretta Murphy, to the Circuit Court of Jackson County. By stipulation and agreement of the parties, the action originally commenced in the Circuit Court of Jackson County, and the claim, or proceeding, appealed from the

Probate Court of Jackson County to the circuit court of said county, were consolidated, by order of said circuit court, and were tried and submitted as one single cause or proceeding.

The substantive facts involved in the determination of the consolidated cause are not controverted by the parties. The record herein discloses that John Joseph Grier, a resident of Kansas City, Missouri, signed, published and declared his last will and testament on November 9, 1916. The said testator died on July 19, 1919, and his will was duly probated in the Probate Court of Jackson County, Missouri, on July 25, 1919. In paragraph 1 of said will, testator directed the payment of all his just debts. In paragraph 2 of said will, testator devised and bequeathed to his wife, Mary Ann Grier, certain described real estate which comprised his home in Kansas City, together with all household furniture and everything contained therein and appurtenant thereto, including the automobiles, and paraphernalia connected therewith, owned by testator at his death. Paragraph 3 of said will, upon the construction, purpose and intent of which paragraph the instant cause must be ruled and determined, reads, in in part, as follows:

"3. I give, devise and bequeath the money and property hereinafter mentioned in this paragraph unto the Fidelity Trust Company, a corporation, of Kansas City, Missouri, as Trustee, with full power to take, hold, manage, invest, reinvest, buy, sell and transfer any and all kinds of property, and to do all things necessary to carry out my desires as hereinafter expressed.

"(a) Said Trustee shall take and hold for the benefit of my niece, Mary Loretta Murphy, fifty (50) shares of stock in the Fidelity Trust Company, of Kansas City, Missouri, fifty (50) shares of stock in the Central National Bank of Topeka, Kansas, forty (40) shares of stock in the Interstate National Bank of Kansas City, Missouri, and fifteen thousand ($15,000) dollars in cash. The net income of this trust fund, or so much thereof as in the opinion of my trustee shall be desirable, shall be turned over to my sister, Anna Grier Murphy, the mother of said Mary Loretta Murphy, until the latter becomes of age, and thereafter the net income, or so much thereof as in the opinion of my trustee shall be desirable, shall be turned over to said Mary Loretta Murphy. When said Mary Loretta Murphy reaches the age of twenty-five years, my said trustee shall pay to her five thousand ($5,000) dollars of the principal of said trust fund. When she reaches the age of thirty years, my trustee shall pay to her the sum of five thousand ($5.000) dollars. When she shall reach the age of thirty-five years, my said trustee shall turn over to her to be and become her absolute property all of the trust fund in its hands except twenty thousand ($20,000) dollars. The net income from this latter amount shall be paid to her during her lifetime, and at her death this fund

shall go to her heirs per *stirpes* and not per capita. If any of those heirs are minors, the portion belonging to said minors shall be retained by my said trustee until they reach their majority, at which time it shall be turned over to them to be and become their absolute property. During their minority, the net income from their portion shall be used for their maintenance, education and support. If my said niece, Mary Loretta Murphy, should die before reaching the age of thirty-five years, whatever remains in the hands of the trustee at that time shall go to her heirs per *stirpes* and not per capita. If any of these heirs be minors, the portion belonging to said minors shall be retained by my said trustee until they reach their majority, at which time it shall be turned over to them to be and become their absolute property. During their minority, the net income from their portion shall be used for their maintenance, education and support.''

In the succeeding subdivisions (b) to (w), inclusive, of said paragraph 3, the testator made certain pecuniary bequests (except in subdivision (n), wherein, in addition to a pecuniary bequest made to his sister, Mary Cunningham, testator devised a city lot in York, Nebraska, in trust for the use and benefit of his said sister), varying in amounts from $1,000 to $15,000, to said Fidelity Trust Company, as trustee, to be held in trust for the use and benefit of certain named beneficiaries, who are the brothers, sisters, nephews, nieces, two godchildren, and a woman servant of testator. The aggregate amount of said money, or pecuniary, bequests is $92,000. In paragraph 4 of said will, the testator bequeathed sums of $500 in money to each of two sisters, a niece, and two women employees of testator. Paragraph 5 of the will, which is the residuary clause, in part provides:

''5. All the rest, residue and remainder of my estate of whatever character and wherever situated, I give, devise and bequeath unto George S. Hovey, of Kansas City, Missouri, in trust with full power to do all things necessary to accomplish the results and purposes hereinafter outlined.. It is my desire that said George S. Hovey, as trustee, take charge of the various businesses in which I am engaged at the time of my death and incorporate any of those businesses which is not already incorporated at that time. Said George S. Hovey, as trustee, shall transfer to said corporation or corporations all property devised and bequeathed to him, including the good will of said businesses. He shall then proceed to manage my business for a period of three years after my death.''

The remaining part of the residuary clause of said will is somewhat complicated, but, in short, it provides for the distribution, by said Hovey, trustee, during the said period of three years, of the net profits and dividends of said corporations, or several businesses of testator, among certain named beneficiaries in certain fixed proportions. At the expiration of said period of three years, said Hovey,

trustee, shall turn over to testator's wife, if she be then living, one-half, or fifty per cent, of the capital stock of said corporations, and in the event of the death of testator's wife before expiration of the said period of three years, said Hovey, trustee, shall distribute said fifty per cent of the capital stock of said corporations among certain charities and certain named individuals in certain fixed proportions, and said Hovey, trustee, shall turn over to certain named employees of said corporations certain definite proportions, or percentages, of the shares of the capital stock of said corporations, aggregating fifteen per cent of said capital stock. The residuary clause of the will concludes, as follows: "At the expiration of said period of three years, said George S. Hovey, as trustee, shall further distribute stock certificates representing the balance of said capital stock in equal amounts to the same persons who shall be entitled to receive the remainder of said net profits and dividends during said period of three years, under the provisions of this will, to-wit," naming twenty beneficiaries, including said Mary Loretta Murphy. In other words, Mary Loretta Murphy, under paragraph 5, or the residuary clause, of testator's said will, takes one-twentieth of 35 per cent of the residuary estate of testator, subject, of course, to her proportionate contribution toward the payment of the debts, if any, of the testator, and her proportionate contribution to the costs of administration of his estate. In the last paragraph of said will, the testator nominates and appoints defendant, George S. Hovey, as the executor of said will.

Certain facts are agreed upon by the parties, as evidenced by their stipulation filed in the consolidated cause, as follows:

"That at the time of the execution of said will by said Grier, to-wit, November 9, 1916, he owned 187 shares of stock of the par value of $100 each in the Fidelity Trust Company mentioned in said will; that subsequently the name of said corporation, Fidelity Trust Company, was changed to 'Fidelity National Bank & Trust Company,' of Kansas City, Missouri, and has remained so since.

"That during his lifetime said decedent, for value received, sold and disposed of all of his said 187 shares in said corporation, except 12 shares thereof, as follows: On March 31, 1919, 100 shares; and on April 30, 1919, 75 shares, so that, at the time of his death, said decedent had and possessed only 12 shares of stock in said Bank & Trust Company and certificates therefor were the only certificates for said stock which came into the possession of said executor; that said Grier died on the 19th day of July, 1919.

"That during the course of the administration of said estate said executor transferred and delivered to Fidelity National Bank & Trust Company (being the altered name as aforesaid of said Fidelity Trust Company) all of said certificates for 12 shares of stock, and received said corporation's receipt therefor. . . .

"That said testator left surviving him his wife, Mary Ann Grier, for whom provision is made in said will, which she accepted, but left no children or heirs of his body.

"That after the execution of said last will, to-wit, on November 9, 1916, said testator made no written alteration thereof by way of codicil or otherwise.

"That Mr. Lester Hall, then a practicing attorney in Kansas City, Missouri, and now vice-president of said Fidelity National Bank & Trust Company, drew said will, and if held competent, and if present, will testify to the following facts: That not long after the 30th of April, 1919, when the last sale of said stock was made by said Grier, said Grier told said Hall of his sale of stock; and also told him he wanted him to change said will so as to give said Mary Loretta Murphy something, but did not mention what, in place of the stock sold by him, and which he had already bequeathed to her in his said will, and that he would come to him shortly to have the change made; that afterwards, and a short time before the death of said Grier, said Grier came to his office to see him at a time when he was engaged with some one else, and waited in the ante-room of his office for some little time, but as he continued to be engaged, said Grier went away, and a few days afterwards died suddenly.

"That Mr. George S. Hovey, the executor, if present and it is held competent, will testify that he was an intimate friend of said John J. Grier, and that Mr. Grier frequently expressed his liking for said Mary Loretta Murphy and intended to take care of her. That said statements of said Hall and Hovey, if held competent, shall be admitted as their testimony."

It was agreed by the parties, in open court, that the aggregate value of the residuary estate of testator is $117,000. It was also agreed by the parties that the fair value of thirty-eight shares of the capital stock of the Fidelity Trust Company is $16,000, and, by agreement of the parties, the defendant Hovey, executor and trustee as aforesaid, has deposited said sum of $16,000 with the Fidelity National Bank & Trust Company, to be held by said bank in escrow pending the final determination of this cause. It is further agreed by the parties that, on November 12, 1919, plaintiff received of defendant, Hovey, executor, to be held by plaintiff in trust for Mary Loretta Murphy, 40 shares of the capital stock of the Interstate National Bank of Kansas City, Missouri; 50 shares of the capital stock of the Central National Bank of Topeka, Kansas; and 12 shares of the capital stock of the Fidelity National Bank & Trust Company (successor in name and in fact to Fidelity Trust Company) ; and that defendant executor has paid to plaintiff trustee the cash, or pecuniary, bequest of $15,000, provided in paragraph 3 of said will, less the state inheritance tax assessed thereon, together with accrued interest

on said pecuniary legacy, to be held by plaintiff in trust for Mary Loretta Murphy.

Anna Grier Murphy, a sister of testator, and the mother of the beneficiary, Mary Loretta Murphy, was permitted to testify, subject to the objections of defendant, as follows: "Q. State to the court how long your brother, the deceased Mr. John J. Grier, was acquainted with your daughter. A. From infancy, of course. . . . After her father died in 1905—she was then about eighteen months old—he (testator) acted really in Mr. Murphy's place; he (testator) looked after her—in fact, he looked after her just like my husband would—looked after her welfare and everything. He was very solicitous for Mary; . . . and he said that he would always look after Mary; and, of course, while he (testator) did not discuss the will with me, in any way, he led me to believe that she would always be taken care of. In fact, he was devoted to her."

Mary Loretta Murphy testified on behalf of plaintiff: "Q. State when was your first recollection of your uncle, Mr. John J. Grier, deceased? A. Probably, when I was about four years old. I recollect he brought me to Kansas City. I used to spend months at a time with him, at his home in Kansas City. I spent most of my time in Kansas City, with Mr. Grier, before we moved there. Mr. Grier had no children of his own. Q. Did he ever say anything to you about what he expected to do for you? A. No, he never did, except he planned my education, and discussed that with me, is about all. Q. You didn't know anything about what he left in his will? A. Nothing."

The trial court, after having taken the cause under advisement, finally excluded all of the parol, or extrinsic, testimony respecting testator's intention, which testimony had been admitted subject to objections thereto, interposed by defendant, on the grounds of incompetency and immateriality, and found the issue in favor of plaintiff. Judgment was entered by the trial court that "plaintiff have and recover of defendant, as executor and trustee under the last will of John Joseph Grier, deceased, the sum of $18,362.25, being the sum of $16,000, the amount agreed on in writing by the parties hereto as the value of the stock and certificates described in the petition, and the interest thereon at six per cent per annum from the 18th day of May, 1922, the date of said agreement, to this date; and (plaintiff) to also recover the costs of this suit." After ineffectually moving for a new trial and for arrest of the judgment, defendant was allowed an appeal to this court.

I. It is the contention of appellant (defendant) herein that the bequest, or legacy, of fifty shares of the capital stock of the Fidelity

Trust Company, made to plaintiff trustee, in trust for testator's niece, Mary Loretta Murphy, by subdivision (a) of paragraph 3 of the will of testator, is a specific legacy, and that, inasmuch as testator owned, and was possessed of, only twelve shares of the capital stock of said Fidelity Trust Company, or of its successor in name and in fact, the Fidelity National Bank and Trust Company, at the time of his death, such specific legacy is adeemed *pro tanto*, and that such specific legacy has failed and is inoperative to the extent of thirty-eight shares of the capital stock of said Fidelity Trust Company, which number of shares, when added to the twelve shares of said stock which testator owned at his death, would have comprised the fifty shares of said capital stock bequeathed to plaintiff, in trust for Mary Loretta Murphy, under said subdivision (a) of paragraph 3 of testator's will. Respondent (plaintiff trustee), on the other hand, contends that said bequest is a general, and a demonstrative, legacy, and, therefore, that the rule or principle of ademption, applicable only to specific legacies, does not apply to such general and demonstrative legacy, and that the deficiency of thirty-eight shares of the capital stock described in said legacy is payable to plaintiff trustee, by defendant executor, out of, and from, the residuary estate and funds of testator. The issue, or question, thus presented for our determination upon this appeal is, therefore, purely one of law.

In approaching the discussion of the issue of law involved herein, it is perhaps appropriate that we quote herein a few of the definitions which have been given to the term "specific legacy" by jurists and law text-writers, and also to state herein some of the distinctive and peculiar attributes of a "specific legacy," which attributes are not common to general and demonstrative legacies. The term "specific legacy" has been variously, and not always uniformly, defined by the juristic authorities.

In Bothamley v. Sherson, L. R. 20 Eq. 304, 308, SIR GEORGE JESSEL, Master of the Rolls, after criticising certain earlier announced definitions of the term "specific bequest," and after expressing the discouragement cast upon succeeding jurists by such earlier definitions, undertakes to define the term, thus: "The first point to consider is, what a specific bequest means; . . . In the first place, it is a part of the testator's property. A general bequest may, or may not be, a part of the testator's property. A man who gives 100 pounds money or 100 pounds stock may not have either the money or the stock, in which case the testator's executors must raise the money or buy the stock; or he may have money or stock sufficient to discharge the legacy, in which case the executors would probably discharge it out of the actual money or stock. But in the case of a general legacy it has no reference to the actual state of the testator's property, it being only supposed that the testator has sufficient property which,

on being realized, will procure for the legatee that which is given to him, while in the case of a specific bequest it must be of a part of the testator's property itself. That is the first thing. In the next place, it must be a part emphatically, as distinguished from the whole. It must be what has been sometimes called a severed or distinguished part. It must not be the whole, in the meaning of being the totality of the testator's property, or the totality of the general residue of his property after having given legacies out of it. But if it satisfy both conditions, that it is a part of the testator's property itself, and is a part as distinguished, as I said before, from the whole, or from the whole of the residue, then it appears to me to satisfy everything that is required to treat it as a specific legacy. I hope the definition which I have attempted to give will be more successful than those which have been attempted before, but I can only express that hope with some degree of trepidation.''

In 40 Cyc. 1869, the author of the subject ''Wills,'' Mr. Arthur W. Blakemore, thus defines the term: ''A specific legacy is a bequest of some definite, specific thing, capable of being designated and identified; one which separates and distinguishes the property bequeathed from the other property of the testator so that it can be identified, and delivered to the legatee as a particular thing or fund bequeathed. Such a legacy can be satisfied only by a delivery to the legatee of the particular thing bequeathed to him, and if that thing is not in existence when the bequest would otherwise become operative the legacy has no effect.''

The term is defined in 18 Am. & Eng. Encyclopedia of Law (2 Ed.) 714, as follows: ''A specific legacy or devise is a gift by will of a specific article or part of the testator's estate, which is identified and distinguished from all other things of the same kind, and which may be satisfied only by the delivery of the particular thing.''

Regardless, however, of the contrariety of definition of the term ''specific bequest, or legacy'' expressed by the several legal writers, and regardless of the accuracy or inaccuracy of such attempted definitions, it appears that the great weight of judicial authority is to the effect that the legal question, whether a bequest or legacy is specific, or whether it is general, in the final analysis, is referable, in each and every case, to the intent of the testator, as gathered from the entire will of the testator, or, as sometimes expressed, ''as gathered from the four corners of the will.'' [O'Day v. O'Day, 193 Mo. 62, 89; Mersman v. Mersman, 136 Mo. 244, 256; Douglass v. Douglass, 13 App. D. C. 21, 28; England v. Vestry of Prince George's Parish, 53 Md. 466, 468; Kunkel v. Macgill, 56 Md. 120, 123; Merriam v. Merriam, 80 Minn. 254, 259; Shethar v. Sherman, 65 How. Pr. (N. Y.) 9, 13; Davis v. Crandall, 101 N. Y. 311, 319.] ''The cardinal rule is that the intention of the testator expressed in his will, or clearly

deducible therefrom, must prevail, if consistent with the rules of law.'' [Kenaday v. Sinnott, 179 U. S. 606, 616.] As aptly expressed in Harper v. Bibb, 47 Ala. 547, 554: ''The will of the testator is the law of the court; and the intention of the testator, so far as his intention is lawful, is his will. It is, therefore, this intention that we must look for, when we seek to construe his testamentary disposition of his estate. In construing a will, the court is authorized to put itself in the testator's place at the time he made it, and view the surrounding circumstances as the testator probably viewed them himself.''

There are certain peculiar and distinctive attributes of a specific bequest, or legacy, which are not common to either general or demonstrative legacies. These peculiar and distinctive attributes of a specific legacy are thus clearly stated in Ives v. Canby, 48 Fed. 718, 719: ''A specific legacy is attended with some advantages and with some disadvantages. If, at the time of the death of the testator, the subject of the legacy is found among the assets of the testator, it must be paid to the legatee by the executor in preference to the general legacies, and is not liable to contribution for the payment of debts due from the estate, if there should not be a sufficiency of assets for that purpose, and for the payment of other legacies in full; and, moreover, such legacy is payable at once, and, where it is a money legacy, with interest from the death of the testator. On the other hand, if the property so specifically bequeathed is not in the possession of the testator at the time of his death, by reason of its previous payment, sale, or destruction, it is adeemed, and the gift fails.''

In 28 Ruling Case Law, 345, it is said: ''The distinctive characteristic of a specific legacy is its liability to ademption. If the identical thing bequeathed is not in existence, or has been disposed of, so that it does not form a part of the testator's estate, at the time of his death, the legacy is extinguished or adeemed, and the legatee's rights are gone. The rule is universal that, in order to make a specific legacy effective, the property bequeathed must be in existence and owned by the testator at the time of his death, and the non-existence of property, at the time of the death of a testator, which has been specifically bequeathed by will, is the familiar and almost typical form of ademption. This may result from a variety of causes, such as a gift, during the lifetime of the testator, of the particular article which was the subject-matter of the legacy, its consumption, loss, death, or sale, and in each of such instances the courts have held that the legacy is adeemed. . . . In the case of a specific legacy, whenever the article in question is not forthcoming, the will is usually construed as meaning that the testator did not intend any other article for the legatee, and therefore he cannot have anything. . . . Sometimes this doctrine of ademption is expressed by saying that the alienation

of bequeathed property by the testator in his lifetime operates as a revocation *pro tanto* of his will.''

In Kenaday v. Sinnott, 179 U. S. 606, 617, it was said by Mr. Chief Justice FULLER, speaking for that court: ''Without going into refinements in respect of the definition of the word 'ademption,' it may be said to be the extinction or withdrawal of a legacy in consequence of some act of the testator equivalent to its revocation or clearly indicative of an intention to revoke. The satisfaction of a general legacy depends on the intention of the testator as inferred from his acts, but the ademption of a specific legacy is effected by the extinction of the thing or fund bequeathed, and *the intention that the legacy should fail is presumed. At least a different intention in that regard which is not expressed will not be implied,* although the intention which is expressed relates to something which has ceased to exist.'' (Italics ours.)

Because of such peculiar and distinctive attributes of a specific bequest, it is sometimes said that there exists a judicial bias against specific legacies, and that the courts favor general bequests; in other words, it is said that the courts lean against the construction of a testamentary bequest as special and specific, and are inclined toward the construction of such bequest as general, unless the will of the testator, construed from its four corners, makes it reasonably clear that a special or specific bequest was intended. [See editorial note, and cases therein cited, in 11 L. R. A. (N. S.) 66, 67.]

There are seemingly but few decisions of the appellate courts of this State, to which learned counsel for the respective parties have directed our attention, which discuss or rule the question whether a testamentary legacy, or gift, of shares of corporate stock is specific. Our own research adds none to the few decisions of the appellate courts of this State which are cited by counsel herein.

In Cozzens v. Jamison, 12 Mo. App. 452, 456, a testatrix had devised by will certain real estate to certain named beneficiaries. After the making of her will and prior to her death, testatrix sold and conveyed a part of the devised real estate. It was held that the devise was specific, and that the alienation of a part of the devised real property by the testatrix during her life rendered the devise inoperative *pro tanto*. In discussing the rule of ademption applicable to such a specific devise, BAKEWELL, J., in speaking for the court, partly by way of *obiter dictum*, said: ''There can be no doubt, at common law, that, if a specific legacy of stocks, security, or money be named in the will, and, before the death of the testator, he dispose of the personalty in question, the will becomes *pro tanto* inoperative, because there is an extinction of the subject, nothing remains to which those words of the will can apply, and it is held that, if the proceeds of such sale or disposition of the personalty were to be substituted and permitted

to pass, the effect would be, as is said by SIR WILLIAM GRANT, in Fryer v. Morris (3 Ves. Jr. 363), to convert a specific, into a pecuniary, legacy. And the same general rule applies where there has been a sale of real estate by a testator after making his will. It operates, as an ademption in case of a legacy, to render the will inoperative so far as the specific devise is concerned. [Webster v. Webster, 105 Mass. 538.]''

In Waters v. Hatch, 181 Mo. 262, 288, the testator, at the time of the execution of his will and at the time of his death, owned sixty shares (no more and no less) of the capital stock of the Carthage National Bank. By paragraph 2 of his will, testator bequeathed to his daughter, Mrs. Vernon, ''sixty shares of stock of the Carthage National Bank of Carthage, Missouri.'' The will made no specific provision for the payment of the debts of testator, and the principal question involved was whether the bequest to Mrs. Vernon was a specific legacy, or whether such bequest was a general legacy and should, therefore, contribute ratably to the payment of the debts of testator and the expenses of administration. The trial court held the bequest to be specific. In ruling the question on appeal, MARSHALL, J., speaking for this division of this court, said: ''It was next claimed that the legacy of sixty shares of stock of the Carthage National Bank to Mrs. Vernon is not a specific legacy. The second clause of the will separates these shares from the balance of the estate and bequeaths them to Mrs. Vernon. *It would be hard to conceive of a more specific legacy.* 'A specific legacy or devise is a gift by will of a specific article or part of the testator's estate, which is identified and distinguished from all other parts of the same kind, and which may be satisfied only by the delivery of the particular thing.' [18 Am. & Eng. Ency. Law (2 Ed.) p. 714, and cases cited.] There was no error in the ruling of the trial court upon this question.'' (Italics ours.)

The question was again before this court in the comparatively recent case, In re Estate of Largue, 267 Mo. 104, 112, wherein the testatrix, at the time of the execution of her will and at the time of her death, owned and possessed 510 shares of the capital stock of the National Bank of Commerce of St. Louis, Missouri. By the several paragraphs of her will, testatrix bequeathed to certain named beneficiaries all of said 510 shares of corporate stock. It appears that, after the death of testatrix, the National Bank of Commerce of St. Louis declared a dividend of $27 on each and every share of said stock. Certain of the beneficiaries of said corporate stock, claiming the bequests made to them were specific bequests, filed in the Probate Court of the City of St. Louis their petition praying for an order on the executors of said will, requiring the payment to said beneficiaries of the dividends declared upon the shares of stock bequeathed to said

beneficiaries. The petition was denied by the probate court, and on appeal to the Circuit Court of the City of St. Louis, that court also entered a judgment for the executors. In ruling the question, RAILEY, C., delivering the opinion of this division of this court, said: "It is insisted by respondents that the legacies to appellants called for no particular shares or particular certificates of stock; that each legacy could have been satisfied by the delivery of any shares or certificates of the requisite number; that they were in no wise identified or distinguished from the other shares of the same stock and were therefore general, and not specific legacies. The following authorities are relied upon, in support of the foregoing contention: Woerner on Am. Law of Administration, sec. 444; Roper on Legacies, 157, and cases cited; Tifft v. Porter, 8 N. Y. 516; Sponsler's Appeal, 107 Pa. 95; Snyder's Estate, 217 Pa. St. 71; Johnson v. Goss, 128 Mass. 433; Eckfeldt's Estate, 7 Weekly Notes of Cases (Pa.), 19; Osborne v. McAlpine, 4 Redfield (N. Y. Sur.), 1; Davis v. Cain's Exr., 1 Iredell Eq. (N. C.) 304; Sibley v. Perry, 7 Ves. 524; Robinson v. Addison, 2 Beav. 515; Evans v. Hunter, 86 Iowa, 413; Gilmer's Legatees v. Gilmer's Executors, 42 Ala. 9; Dryden, Exr., v. Owings, 49 Md. 356; Palmer v. Estate of Palmer, 106 Me. 25.

"Tifft v. Porter, supra, seems to be the leading authority relied upon, and follows the English rule upon the question involved. . . . It is practically conceded in all the authorities cited supra, that if the will in controversy had said 'my stock,' or the 'stock which I own,' or had used some similar expression, the legacies granted to appellants would have been *specific.* . . . Under the authorities heretofore cited, if each of the bequests had been written . . . by inserting 'my' before the word 'stock,' it would have characterized the respective legacies of appellants as *specific,* instead of general. If testatrix understood she was doing the very thing which the use of 'my' before 'stock' would imply, in framing said legacies, then her *intention,* if carried out, would convey to each of said legatees a specific bequest. Many of the courts of last resort in this country have broken away from the arbitrary and iron-clad English rule aforesaid, and construe legacies as specific, when bank stock or other stock is disposed of, without the use of 'my' or similar expressions, where the will, upon its face, fairly discloses the intention of testator to make a specific bequest. In support of this proposition, we call attention to the following authorities: Jewell v. Appolonio, 75 N. H. 317; Drake v. True, 72 N. H. 322; Ferreck's Estate, 241 Pa. St. 340; Lewis v. Sedgwick, 223 Ill. 213; Gardner v. Viall, 36 R. I. l. c. 440; In re Lyle, 85 N. Y. Supp. 290; Gordon v. James, 86 Miss. l. c. 746-748; In re Zeile, 74 Cal. l. c. 130; New Albany Trust Co. v. Powell, 29 Ind. App. 494; White v. Winchester, 6 Pick. (Mass.) 48; Metcalf v. Framingham Parish, 128 Mass. 370; Harvard Unitarian Society v.

Tufts, 151 Mass. l. c. 78-79; Thayer v. Paulding, 200 Mass. 98; Kunkel v. Macgill, 56 Md. l. c. 126; Norris v. Exrs. of Thomson, 16 N. J. Eq. 542; School Dist. No. 1 v. International Trust Co., 149 Pac. (Colo.) 620; Douglass v. Douglass, 13 D. C. App. l. c. 29; Waters v. Hatch, 181 Mo. 262. In the foregoing cases, bank stock and other stock were disposed of by testators under facts similar to those in the case at bar, and the legacies were declared *specific* bequests, without the use of the word 'my' or words of similar import. . . . Keeping in mind the obligation resting upon us, to ascertain and carry out the intention of testatrix, we cannot escape the conviction that Mrs. Largue fully intended that these appellants should have and hold, as specific bequests, the bank stock left them by the will, as well as the dividends paid thereon to the executors of said estate.''

It is argued by respondent herein that the decisions of this court in Waters v. Hatch, supra, 181 Mo. 262, and In re Estate of Largue, supra, 267 Mo. 104, are distinguishable from the case at bar for the reason that, in each of those cases, the testator owned, at the time of the execution of the will, the exact number of shares of corporate stock which he bequeathed by the will, whereas, in the case at bar, it is agreed as the fact that testator owned 187 shares of the capital stock of the Fidelity Trust Company at the time of the execution of his will, but bequeathed only fifty shares of said stock in the will. However, in the cases of Metcalf v. Framingham Parish, 128 Mass. 370, and New Albany Trust Company v. Powell, 29 Ind. App. 494 (which cases are seemingly cited with approval by this court in our opinion rendered in the case of In re Estate of Largue, supra), the testator in each of those cases owned a greater number of shares of corporate stock, at the time of the execution of his will, than he bequeathed in the will, and the bequests of such shares of corporate stock were held to be specific, and not general or demonstrative.

Examining the will of the testator, John Joseph Grier, as a whole, in order that we may gather therefrom the intention of the testator, there appear from a close study of the will two strong considerations, or reasons, which, to our minds, manifest the intention of testator that the bequest of fifty shares of the capital stock of the Fidelity Trust Company to plaintiff, in trust for Mary Loretta Murphy, be specific rather than general. Those considerations, or reasons, are these: (1) In subdivision (a) of paragraph 3 of the will, testator bequeathed to plaintiff trustee, in trust for Mary Loretta Murphy, not only the fifty shares of the capital stock of the Fidelity Trust Company, together with a certain definite number of shares of other bank stocks, but he also made therein a pecuniary bequest of $15,000 in cash; and, (2) the bank stock bequeathed in subdivision (a) of paragraph 3 of said

will is the only specifically described species of personal property designated in the entire will, except the furniture and appurtenances in testator's home and the automobiles and paraphernalia connected therewith, which were bequeathed to testator's wife in paragraph 2 of the will; in other words, every other bequest of personal property made in the entire will, except the aforesaid bequests in paragraph 2, and in subdivision (a) of paragraph 3 of said will, are purely pecuniary bequests.

In Metcalf v. Framingham Parish, 128 Mass. 370, 372, a testator by the first paragraph of his will bequeathed to Framingham Parish "fifty shares of the stock of the Pittsburg, Fort Wayne & Chicago Railroad Company," and also "the further sum of five thousand dollars;" and, by the second paragraph of his will, he bequeathed to the town of Framingham the sum of five hundred dollars and also fifty shares of the stock of the same corporation. Said the Massachusetts Supreme Judicial Court, speaking through GRAY, C. J.: "The first question presented by the bill is whether the bequests of shares in the stock of the Pittsburg, Fort Wayne & Chicago Railroad Company are specific or general. This depends on the apparent intent of the testator. We are unanimously of opinion that his intention that these bequests should be specific clearly appears upon a view of the whole will, and especially from the following considerations: 1st. He not only makes many bequests of stock in this corporation and many pecuniary legacies to different persons and institutions, but in the first and in the second items of the will he makes to the same legatees bequests both of stock and of money, a fact much relied on by Lord Chancellor CAIRNS in Kermode v. Macdonald, L. R. 3 Ch. 584, as showing that a legacy of a sum invested in stock was specific."

In Kermode v. Macdonald, L. R. 3 Ch. 584, 586, approvingly cited by GRAY, C. J., in Metcalf v. Framingham Parish, supra, the testatrix by her will bequeathed to Mary Griffith the interest, profits, or produce of the sum of 300 pounds British, or thereabouts, invested by testatrix in the General Steam Navigation Company, London, and also the interest of 200 pounds British, for her life, and upon her decease the testatrix desired that "the said principal sum of 500 pounds" should be equally divided among the children of Mary Griffith. Said Lord CAIRNS, L. C.: "It seems to me impossible to treat this legacy of 300 pounds otherwise than as a specific legacy of the interest which the testatrix had in the General Steam Navigation Company. This is made clear by the contrast between this and the following bequest, which is intended to be a legacy in gross, and simply pecuniary."

In Douglass v. Douglass, 13 App. D. C. 21, 29, the testator by the third paragraph of his will bequeathed to his wife "ten thousand dollars in registered United States bonds, and ten thousand dollars

in lawful money, the latter to be derived from my other property not mentioned in the foregoing." It was ruled by the Court of Appeals of the District of Columbia that the bequest of the United States bonds was specific, and not general. Said that court: "Conceding that the word 'registered,' as descriptive of the bonds, would not necessarily render the legacy specific, and giving due weight to the omission of the specially descriptive 'my,' still, in our opinion, an intention to make the legacy specific appears from the immediately succeeding additional bequest of another ten thousand dollars 'in lawful money.' Then, as if to render this indication of intention clear, the testator adds the remaining words of the sentence: 'The latter to be derived from my other property not mentioned in the foregoing;' that is to say, from property not before specifically bequeathed. Rejecting these last words, even, the separation of the two bequests into the bonds which he then possessed, on the one hand, and into money, on the other, considered in connection with the general scheme of the will, would, as intimated above, be sufficient of itself to indicate the intention to make the first one specific. In a well-considered decision of the Supreme Judicial Court of Massachusetts, substantially similar words of separation in a bequest of stocks and money were regarded as having an important effect upon the construction of the will. After referring to the language of the testator in several of the items making bequests, the court said: 'But in the first and in the second items of the will he makes to the same legatees bequests both of stocks and of money, a fact much relied on by Lord Chancellor CAIRNS in Kermode v. Macdonald, L. R. 3 Ch. 584, as showing that the legacy of a sum invested in stocks was specific.' [Metcalf v. Framingham Parish, 128 Mass. 370, 372.]"

The case of New Albany Trust Co. v. Powell, 29 Ind. App. 494, is almost identical in its substantive facts with the case at bar. The testator therein, by paragraph 2 of his will, made the following bequest: "I will and bequeath to my granddaughter, Willie Trow Foster, the sum of $5,000 in money, and 200 shares of the capital stock of the Madison Gaslight Company of Madison, Indiana." The court found that, when the will was executed, the testator was the owner of 259 shares of the capital stock of the Madison Gaslight Company; that, after the execution of said will, testator sold 159 shares of said stock; and from that time until the date of his death, testator owned 100 shares of said stock, and no more. In ruling the question whether the bequest of the shares of stock was specific, or whether it was general, WILEY, C. J., speaking for that court, said: "The controverted question presented by the record must be determined by construing that part of item two of the will in which the testator bequeathed to his granddaughter 200 shares of the capital stock of the Madison Gaslight Company. There is no controversy over any other

provision of the will. If the bequest to appellant, Willie Trow Foster, of said shares of stock was a specific legacy, then she would be entitled to receive only that portion of said stock owned by the testator at the time of his death. . . . The construction of a will depends, not so much upon any rigid principles of law, as upon what appears, by the will, to have been the testator's intention. [Lutz v. Lutz, 2 Blackf. 72; Corey v. Springer, 138 Ind. 506; Hartwig v. Schiefer, 147 Ind. 64; Bray v. Miles, 23 Ind. App. 432.] At the time the decedent executed his will, he owned 259 shares of the capital stock of the Madison Gaslight Company, and it is to be presumed that he had that particular stock in mind. While a person might make a devise of some article of personal property which he did not possess at the time—for he might make provision for its procurement after his death—yet it would be an unusual thing to do, and out of the ordinary. If appellant had intended to devise to his granddaughter 200 shares of said stock, whether he owned the same or not, at his death, it is reasonable to presume he would have made provision by his will for his executor to purchase the same and turn it over to her. This he did not do. . . . The bequests made to Willie are separate and distinct. The testator first bequeathed to her a specific sum of money; and, second, shares of stock in a specified corporation. Taking the will as a whole, it clearly appears that the testator meant to bequeath a portion of the stock he owned in the gaslight company at the time of his death. The language of the will as a whole will not bear the interpretation that it was the intention of the testator that, if at the time of his death he did not own 200 shares of said stock, it was the duty of the executor to go into the market and purchase enough, or all, to make good the specific legacy to his granddaughter. . . . It has also been held that where there is a bequest of stocks and money, and the testator at the time of making his will owned stock of the kind bequeathed, such separation of the bequest into stocks and money has been considered as showing an intent to make the bequest of the stock specific. [18 Am. & Eng. Ency. Law, 715; Douglass v. Douglass, 13 App. Cas. (D. C.) 21; Metcalf v. First Parish, etc., 128 Mass. 370; Kermode v. Macdonald, L. R. 3 Ch. App. 584; White v. Winchester, 6 Pick. 48.] . . . The intention of the testator is made manifest by dividing his bounty to his granddaughter into money and stocks. He wanted her to enjoy the stock *in specie*. A will only speaks from the time of the testator's death, and it can only operate upon property which he owned at the time of his death. . . . It follows that, while a specific legacy may be bequeathed to a designated person, the maker of the will, during his life, may dispose of the thing or specific property bequeathed, and in such case the legatee to whom the specific legacy was devised takes nothing. The testator

was at liberty to dispose of his property, real and personal, notwithstanding his will. This he did in part, for he conveyed a portion of his real estate to his wife, and sold and disposed of 159 shares of the specific stock which he bequeathed to his granddaughter. . . . A will can only operate upon that which exists at the time it speaks, and as we have seen it speaks from the death of the testator. Where a specific bequest of personal property is made, and the testator disposes of such property during his life, such bequest is thus adeemed and destroyed. [Douglass v. Douglass, 13 App. Cas. (D. C.) 21.] The law is settled that a legacy is adeemed if the specific thing does not exist at the testator's death. [Pattison v. Pattison, 1 Myl. and K. 12; Ford v. Ford, 23 N. H. 212; Beck v. McGillis, 9 Barb. (N. Y.) 35.] In Ashburner v. Macguire, 2 Brown Ch. 108, Lord Chancellor THURLOW said: 'The testator, after making his will, sold his stock, which made it as if it had never existed; the legacy is adeemed according to all the cases.' . . . The doctrine of ademption by alienation, however, operates pro tanto only; so where but part of a legacy has been alienated the remainder still passes to the legatee. [1 Am. & Eng. Ency. Law (2 Ed.) 625, and authorities there cited.] Under the authorities, the bequest to Willie Trow Foster of the 200 shares of stock in the Madison Gaslight Company was a specific legacy, and as the testator alienated 159 shares of the stock during his lifetime, and at his death owned only 100 shares, the legacy was adeemed pro tanto, and the will operates only upon the shares owned by him at his death.''

The aforecited and quoted decisions in Metcalf v. Framingham Parish, Douglass v. Douglass, and New Albany Trust Company v. Powell, supra, are all approvingly cited by this court in our opinion In re Estate of Largue, 267 Mo. 104.

Respondent argues that, inasmuch as testator owned 187 shares of the capital stock of the Fidelity Trust Company at the time of the execution of his will and he bequeathed only fifty shares of said stock, it is therefore impossible to separate and distinguish the identical fifty shares of said stock so bequeathed from the remaining 137 shares which testator owned at the time of the execution of his will; wherefore, respondent insists that the bequest, or legacy, is purely a demonstrative legacy, which merely designates the fund, or particular species of personal property, out of which the quantity of the bequest is payable, and which demonstrative legacy is payable out of testator's general estate if the particular fund or species of property designated proves insufficient to satisfy and discharge the quantity of the bequest. But the shares of stock in the Fidelity Trust Company owned by testator at the time he executed his will were all alike, and of the same character, and each single share of said stock was of equal value with every other single share.

Therefore, as said by this court In re Estate of Largue, supra, 267 Mo. l. c. 116: ''It made no difference to her (testatrix) *which* particular shares of stock each legatee received, as they were all alike, and all of the same value.'' We do not consider such circumstance as conclusive, or convincing, that testator intended the bequest to be demonstrative and general, rather than special and specific.

It is furthermore insisted by respondent that the directions given to respondent, as trustee, in paragraph 3 of testator's will, clearly show that the testator considered and treated the bank stocks mentioned and bequeathed in subdivision (a) of said paragraph as money, along with the pecuniary bequest of $15,000 in cash, and this for the reason that testator refers therein to the entire bequest as ''this trust fund'' and authorizes the trustee to ''sell and transfer any and all kinds of property, and to do all things necessary to carry out my desires as hereinafter expressed.'' While it is true that the testator, by the directions given in said paragraph of his will, authorized and empowered respondent, as trustee, to sell and transfer any and all kinds of property therein bequeathed, yet he also gave to said respondent trustee ''full power to *take, hold and manage* said property.'' In our opinion, it was clearly and unmistakably the intention of testator to create, by paragraph 3 of his will, an active trust for the handling of the bequest for the use and benefit of Mary Loretta Murphy, and therefore that testator merely intended to make the powers of the trustee, in the handling and management of such trust bequest, sufficiently broad in their scope to permit of a sale of the particularly designated stocks bequeathed in the event that there should, at any time, be danger of a depreciation or loss in the value of said stocks, or any of them. We held, In re Estate of Largue, supra, 267 Mo. l. c. 114, that the fact that testator therein created, by his will, an active trust as respecting a certain number of shares of bank stock was a manifestation of the testator's intention that the bequest was to be specific, rather than general and demonstrative. Furthermore, it seems apparent to us that, if the testator had intended the shares of bank stock bequeathed to be treated as money or cash, along with the pecuniary or cash bequest of $15,000 made in the same subdivision of the will, he would have provided therein for a wholly pecuniary bequest for the benefit of his niece, Mary Loretta Murphy, as he did in every other subdivision, or item, of the will in making provision for his brothers, sisters, nephews and nieces. It is evident to our minds that testator intended that his niece, Mary Loretta Murphy, should have the increment, during the period of the trust, from the particular and identical personal property bequeathed to her in trust, otherwise he would have made to her in trust a wholly pecuniary bequest payable in cash or money, as he did to all the other beneficiaries

of his will, except in the single instance of the bequest made to his wife.

We have given careful and thoughtful study and consideration to the several authorities of other and foreign jurisdictions cited by learned counsel for respondent in support of their contention herein. It would unduly extend this opinion to discuss herein the several authorities thus cited. While we concede that there is some contrariety of juristic opinion upon the legal question involved herein, nevertheless, we regard the authorities hereinabove cited by us as being the more logical and reasonable in the conclusions reached upon such legal question; and as being more in consonance with the aforequoted decisions of this court upon a similar, or like, question. Most, if not all, of the authorities cited and relied upon by respondent are bottomed upon the early case of Tifft v. Porter, 8 N. Y. 516, decided by the Court of Appeals of New York by a much divided court, and which case is predicated upon, and follows, the English rule upon the legal question involved. The same authorities, including Tifft v. Porter, supra, were referred to, and disapprovingly cited, by this court in In re Estate of Largue, 267 Mo. l. c. 112, 114, wherein we said, in adopting the contrary rule: "Many of the courts of last resort in this country have broken away from the arbitrary and ironclad English rule aforesaid, and construe legacies as specific, when bank stock or other stock is disposed of, . . . where the will, upon its face, fairly discloses the intention of testator to make a specific bequest."

In view of the fact that the bequest in controversy is one both of money and of particular bank stocks, and is the only bequest of such kind and character to be found in the entire will, and in further view of the fact that the bank stocks mentioned in such bequest are the only specifically described species of personal property (with the single exception of the personal property given by testator to his wife) bequeathed by the will, we are brought to the inescapable conclusion that it was the manifest intention of testator, as disclosed by the entire will, that such bequest should be specific, and not general and demonstrative.

II. The trial court admitted, subject to the objections of appellant, certain parol or extrinsic testimony respecting testator's intention, which testimony, however, the trial court finally excluded before entering judgment herein. The excluded testimony pointed little, if any, to testator's intention in making the bequest in controversy, except, perhaps, the agreed testimony of Mr. Lester Hall, the attorney who drew the will for testator, which is to the effect that, shortly after testator had made the last sale of the 175 shares of stock which were disposed of before his

death, testator told Mr. Hall "he wanted him (Hall) to change said will so as to give Mary Loretta Murphy something, but did not mention what, in place of the stock sold by him, and which he had already bequeathed to her in his said will." Such testimony, if properly admissible, seemingly would indicate that testator thought he had rendered the bequest ineffective and inoperative to the extent of the shares of stock sold by him, and intended thereafter to substitute other property therefor—an intention, if entertained by testator, which was never consummated by a change of his will, and an intention which cannot be said to be inconsistent with the other intention, disclosed by the will in its entirety, that the bequest as originally made in the will, and left unchanged by testator, should be specific, and not general. But be that as it may, the language of the will is clear and unambiguous, and, in our opinion, calls for no parol or extrinsic testimony respecting testator's intention, or respecting the meaning testator intended to ascribe to the clear and unambiguous language used by him throughout the paragraph in controversy and in the remaining paragraphs and items of said will. [Wooley v. Hays, 285 Mo. 566, 576; McCoy v. Bradbury, 290 Mo. 650, 658; Murphy v. Enright (Mo. Sup.), 264 S. W. 811, 813.] In Wheeler v. Wood, 104 Mich. 414, it is held that, if a will is free from ambiguity, the intention of the testator in respect of the general or specific character of the legacies is to be determined by the language of the will itself, and not from extrinsic and parol testimony.

It follows, from the conclusions reached by us herein, that the judgment nisi should have been in favor of the appellant executor, George S. Hovey; and, therefore, that the judgment of the circuit court must be reversed. It is so ordered. Lindsay and Ellison, CC., concur.

PER CURIAM:—The foregoing opinion by SEDDON, C., is adopted as the opinion of the court. All of the judges concur.