Mersman v. Mersman.

MERSMAN *et al.* v. MERSMAN *et al.*, *Appellants.*

Division One, December 1, 1896.

1. **Trusts and Trustees:** BILL FOR INSTRUCTIONS. Testamentary trustees may maintain a bill for instructions as to their proper course, in case of reasonable doubt as to the interpretation of terms of the trust.

2. **Will, Interpretation of:** EVIDENCE. The true interpretation of a will is that which correctly unfolds the intention of the testator as expressed in the document, but evidence of his declarations as to his purposes in making the will are held inadmissible in this case.

3. ————. Upon an issue whether a testator intended his old residence to be used by certain of his children as long as they chose to occupy it, or intended to give them a home at the residence or elsewhere from its proceeds at their election, the court found in favor of the former contention, on the facts stated in the opinion.

4. ————. In construing an instrument all its parts should, if possible, be given effect, and none perish by construction. Each will is to a great extent its own interpreter.

5. ————. General expressions of a purpose in a will do not override special directions as to a particular property, the disposal of which is minutely provided for.

6. ————: EVIDENCE. In interpreting a will it is often proper to bring into view the circumstances of the testator; but in this case it is held that offers to prove depreciation of the property in question and the cost of maintaining it, as well as evidence of the incomes of beneficiaries and the state of the testator's feelings to his other children, were properly excluded.

*Appeal from St. Louis City Circuit Court.*—HON. DANIEL DILLON, Judge.

AFFIRMED.

THE suit is to obtain a construction of the will of Mr. Joseph J. Mersman, deceased. It is a very long document. The following synopsis of certain sections of it and quotations of the material passages present a sufficient outline of the subject-matter of the controversy:

THE MERSMAN WILL.

Section 1. General provision for payment of debts and funeral expenses.

Sec. 2. Releases to the four sons of indebtedness to the testator. Bequest to them of testator's claims against firms in which they were partners, respectively. Bequest to Otto L. Mersman of a specific claim.

Sec. 3. Specific bequest of shares in the Fourth National Bank to the four daughters, three sons and a sister of testator.

Sec. 4. Specific bequest of two shares in a House Building Association to Fred. C. Mersman.

Sec. 5. Provisions concerning library and pictures, and bequest thereof to all of testator's children in equal shares.

Sec. 6. Legacy of $850 to sister-in-law of testator.

Sec. 7. Bequest of the furniture, etc., of testator's residence on Mississippi avenue and Kennett Place, "as a family home," to the trustees afterwards appointed, for the use of the children, "under the condition and directions hereinafter expressed."

Sec. 8. All personalty not specifically bequeathed to be converted into cash and applied to payment of

debts and cash legacies. Bequest out of same (together with proceeds of shares of stock in the Fourth National Bank) to Arthur, for purchase of a home for him, of the value of $4,000. In case the personal property is not sufficient to pay the debts and legacies, the income of the real estate is to be used for that purpose. In case of excess of personal property over and above the debts and legacies, such excess to be distributed among all the children in equal shares.

"9. Having by deed given to each of my three other daughters a similar property, I hereby give, devise and bequeath my house known as No. 1824 Lafayette avenue in the City of St. Louis, Missouri, to my daughter Ella C. Mersman, for her own sole and separate use, in the manner heretofore generally prescribed for all devises and bequests to my daughters."

"10. All my remaining real estate with the improvements thereon, I give, devise and bequeath to my sons, Joseph J. Mersman, Jr., Frederick C. Mersman and Otto L. Mersman, trustees, and to the survivors of them and their successor or successors in the trust and their heirs, executors and administrators, in trust, however, for the following uses and purposes and under the following conditions, to wit: while any of my children, Frederick C., Emma C., or Ella C., may desire to have a home in the family residence at the southeast corner of Mississippi avenue and Kennett place, the trustees shall not sell the same nor the household goods and furnishings therein contained, but shall permit my said children, or any of them, to use said house and furnishings as a dwelling for themselves. No rent shall be paid for such use and occupation by any of said children, but the expense of maintaining the grounds and buildings, including repairs, taxes and insurance, shall be paid by the trustees and deducted from time to time from the income paid to those of my

said children, who may live in the house, from certain portions of my other real estate; each of said children to pay an equal portion of the expense of maintaining the house.   Whenever none of my last named children shall desire any longer to reside in the house, the trustees shall sell the same, together with all the furniture, carpets, household goods and utensils herein bequeathed to them, at public or private sale, according to their discretion, and shall pay over the proceeds thereof to all of my children, share and share alike."

Sec. 11.   The trustees shall collect the income of the remaining real estate or re-investments and pay same as afterward directed.   But before the trustees proceed to pay over such net income, they are to pay to the executors whatever is necessary to pay the debts, funeral expenses and cash legacies.   This clause of the will also contains special provisions for a house to be purchased for Arthur A. Mersman, at a cost not to exceed $4,000.

Sec. 12.   The trustees shall pay the net income of house No. 1305 South Seventh street to Joseph during his life, and after his death to his children.

Sec. 13.   The trustees shall pay to Frederick, during his life and thereafter to his children, the net income of house Nos. 16 and 18 North Main street.

Sec. 14.   The trustees shall pay to Arthur during his life, and thereafter to his children, the net income of buildings No. 107 North Main street and No. 10 North Third street.

Sec. 15.   This section declares that no like provision is made for Otto, because considerable sums have been given to him during the lifetime of the testator as an advancement of his share in the estate; but that he is nevertheless to share with the other children as a class in the provisions referring to them as such.

Sec. 16.   The trustees shall pay to testator's four daughters, Clara, Emma, Alice, and Ella, during their lives, and thereafter to their children, the net income of four pieces of improved property in the City of St. Louis, the same being specifically described, by streets and numbers.

Sec. 17.   Should any of said four daughters die leaving no issue, or should such issue become extinct, then the respective share of the net income shall be paid to the other children of the testator during their respective lives, and after their death to their children.

Sec. 18.   Provides for the continuance of the trust during the lives of said Joseph, Frederick, Arthur, and the four daughters, and after their death until the youngest grandchild becomes of age, when partition may be made.

"19.   The trustees herein named and their successors and the heirs, executors and administrators of them and their successors are hereby empowered to sell, hypothecate, mortgage, pledge, rent, let, improve, rebuild, repair and generally to manage and dispose of any and all of the property with all the absolute freedom and power which I myself might exercise, if living, provided, that in all things they shall act prudently for the best interests of the beneficiaries of the trust.   The said trustees are also empowered to sell or mortgage any one or more properties or reinvestments for the purpose of raising funds to improve or rebuild other properties, should such an investment seem to them more profitable; they shall keep perfect accounts between the different beneficiaries and the funds upon which they are to receive the income, upon the basis that my several children and their heirs shall be entitled always to the income from the particular properties herein set apart for them, or the money raised

thereon by sale or mortgage and the reinvestments of such moneys together with the increase and increment thereof. In case of loss by fire, the insurance collected therefor may be used to rebuild, or otherwise invested as the trustees may deem best. They may purchase and improve other real estate, but the same shall not be of a speculative character, and otherwise these investments and reinvestments shall be in such properties and securities as are approved by law for the investment of trust funds. The trustees or their successors shall pay all expenses of maintaining the real estate held by them, at any time during the trust, in good repair, also insurance and taxes out of the gross income collected by them, charging them respectively against the different properties or funds in their hands, so that each child may bear the expenses on the property or funds from which it derives income, paying over to the different beneficiaries only the net income therefrom."

Sec. 20. Provides for action by majority of trustees, and that one of the three may be a non-resident of Missouri.

Sec. 21. Provides for filling vacancies in number of trustees.

Sec. 22. In case of contest of the will by any of the children such contestant shall receive one dollar in lieu of all the provisions in said will made in favor of such child.

Sec. 23. Appointment of Joseph, Frederick, and Otto as joint executors, not to give any bond or security either as executors or as trustees.

The other facts necessary to an understanding of the opinion appear therein.

*Mills & Grant* for Ella C. Mersman and Emma C. Mersman, appellants.

The object of this suit is to obtain a construction of the will of Joseph J. Mersman, deceased, and particularly the tenth and nineteenth clauses thereof. The purpose of construction is, of course, the arriving at the intention of the testator as expressed in the will. In order to do so, the court should be placed in the same position as that occupied by the testator, and the will read in the light of the circumstances under which it was made, so that a correct understanding may be had of the meaning of the language used, and the objects intended to be thereby accomplished. Both the tenth and nineteenth clauses of this will, and indeed the whole will, are to be read together, and each construed with reference to the other, and in arriving at the true meaning of the will, it is a cardinal rule that the general intention should control a particular intention, if inconsistent. The subordinate, secondary, particular intention, if inconsistent with the primary, leading, general intention, always gives way to the latter. 2 Woerner, Administrations, sec. 416, p. 878; *Howland v. Howland*, 11 Gray, 469–476; *Schott Est.*, 78 Pa. St. 40, 44; *Peters v. Carr*, 16 Mo. 64, 65; *Haydell v. Hurck*, 72 Mo. 253-257. In providing a home for Ella, Emma, and F. C. Mersman, who had continued to live with the testator and were his constant companions and attendants during his old age and sickness, it is irresistible, not only from the language of the tenth clause alone, but doubly strengthened by a consideration of the circumstances under which it was written, that the testator's general and leading primary intention was to provide for his three children, who had remained with him to the last. Read the nineteenth clause in connection with the tenth, bearing

in mind the intention of the testator, and remembering that the home referred to was devised to the trustees, as was all the other property, and it is seen that the trustees have power to sell and reinvest for the benefit of the beneficiaries. The court erred in refusing to admit any testimony of the surroundings and expressions of the testator. The evidence was admissible and proper. *Small v. Field*, 102 Mo. 104; *Murphy v. Carlin*, 113 Mo. 117; *Munro v. Collins*, 95 Mo. 33; *Long v. Timms*, 107 Mo. 512. Further declarations of the testator as to subjects or objects of his bounty are admissible in evidence when a latent ambiguity arises. *Thomson v. Thomson*, 115 Mo. 56. A fair examination of the instrument will show that the court's construction, if the court really desired to find out the intention of the testator, could have been greatly assisted by the evidence which was sought to be elicited, but which the court ruled out. A fair and proper solution of the matter is to permit the homestead to be sold and reinvested.

*Wm. F. Woerner* for Otto L. Mersman *et al.*, trustees, respondents.

(1) The entire will must be construed together, its several parts with reference to each other, so as to form, if possible, one consistent whole, giving effect to every part of the instrument. *Small v. Field*, 102 Mo. 104. (2) Where two clauses in a will are absolutely irreconcilable, the latter must prevail. But this alternative is resorted to only in despair of otherwise arriving at a solution of the testator's meaning. Woerner on Administration, sec. 415, pp. 873, 874. (3) The general intention, in case of an irreconcilable inconsistency, must control the particular intention. Where the will directs a purpose to be accomplished, and also points

out the means by which the result is to be reached, which means is found inadequate to accomplish the end, the directions pointing out the means must be sacrificed to the accomplishment of the end.    Woerner on Administration, sec. 416, page 877.    (4)    Parol evidence is always inadmissible to show what the testator intended to have written.    But where the will on its face is capable of either of two interpretations, the court, in order to ascertain the testator's real intention, endeavors to put itself in his place by hearing evidence *aliunde* of the condition and circumstances of his family and property, the nature and condition of the subjects and objects of the testamentary disposition and the environments under which the will was written. Woerner on Administration, sec. 421, page 893; *Small v. Field*, 102 Mo. 104, 121; *Nichols v. Boswell*, 103 Mo. 151.    (5)    The vital question for decision is therefore: Was the main purpose of the testator to give the three unmarried children a home at all events, with the secondary desire that it should be the old home, or was it his primary intention to give them this particular homestead and no other, with the incidental intent that it should be occupied as a home.

*Lubke & Muench* for Alice A. Giraldin and *Rudolph Schulenburg* for Clara C. Roux, respondents.

(1)    The question submitted to the the court for its decision is:    Was it the purpose of the testator, as expressed in his will, to give to the three unmarried children a home at all events, with the desire that it should be the old home; or was it his intention, as expressed in the will, to give them this particular home, and no other, so long as they choose to make it their home?    Counsel of plaintiffs, the trustees under the will, in the closing paragraph of his brief, propounds said question in similar language; but omits or fails to

add thereto the feature or qualification contained in the words: "As expressed in the will." The question as put by these respondents is the correct one, and not the one of plaintiffs. 2 Woerner's Administration, sec. 414; 5 Bar. and Ad., 122–129. "In expounding a will the court is to ascertain, not what the testator actually intended, as contradistinguished from what his words express, but what is the meaning of the words he has used." The cardinal rule in expounding or construing a will is, to find and ascertain from the will the legal intention of the testator, to wit: the meaning of the language expressed and employed by him in the will, understood in its grammatical and ordinary sense, all of the provisions being taken together with reference to each other, and so that effect is given to every clause and all parts of the will. This rule is too well established to need citation of cases in its support, and reference is merely had to 2 Woerner's Administration, secs. 414, 415; *Schorr v. Carter*, 120 Mo. 409. (2) Section 10 is not affected by section 19 or any of the other clauses of the will. From an examination of testator's will, it is obvious that its legal intent, as expressed therein in very plain language, is as follows: Specific bequests of personalty to testator's children and relatives in their own right. Devise of one piece of real estate to one daughter in her own right, to equalize her share; creation of a trust of the remaining real estate by a devise thereof to three trustees, to the use of different and distinct and on different and distinct trusts, as to the several pieces of real estate so devised. (3) Section 10, standing and to be construed by itself, in very plain and unmistakable language, gives to the three children the family residence as a home, and no other. If it has any bearing on or connection with section 19, it is not inconsistent with it, and effect can be given to both

sections. If the contention of these respondents is found to be true, that the two sections are applicable to different particular objects and persons and to different particular trusts, then the correctness of the above proposition is self-evident. Effect must be given to each section. 2 Woerner's Administration, 415; *Peters v. Carr*, 16 Mo. 54; *Schorr v. Carter*, 120 Mo. 409. (4) The rule invoked by appellants, that the general intention in case of an irreconcilable inconsistency, must control the particular intention, does not apply in this case. This rule is adaptable only when there is an expression of the general intention and of the particular intention, and they are conflicting with each other. Such is not the case in this instance. (5) The court below did not err in refusing to admit the evidence offered by appellants. The cases cited by appellants do not sustain their contention on this point.

BARCLAY, J.—The suit is in equity by trustees under the will of Mr. Joseph J. Mersman to have instructions from the court as to their powers and duties. All the parties interested were brought into the case. The trial court entertained the petition and construed the will, after a full hearing.

In the statement opening the report of the present appeal, appear the important parts of the document to be construed, and also a short description of the other portions of it.

There are two groups of beneficiaries, one group asserting a certain meaning of the will, and the other denying it. The substance of the claim of the first group is that the homestead premises (described in section 10 of the will) should be sold and the proceeds invested in other property, subject to the same conditions and rights of occupancy. They insist that the three beneficiaries (authorized to occupy the old home-

stead) are entitled to exercise the choice above indi-
cated, and that by reason of the tendency of said real
property to depreciate in value, and for other reasons,
the best interests of all concerned would be subserved
by a sale outright of that property and a re-invest-
ment of the proceeds elsewhere on the same limita-
tions.

The other group of interested parties combat the
above theory.

In view of the controversy as to what should be
done, the testamentary trustees came into court, assert-
ing that they were in doubt and uncertainty as to the
true interpretation of the terms of the trust, and de-
sired the advice of the court.

The various parties to the difference then stated
their positions in a series of pleadings that need not be
further noted.

The real gist of the whole dispute is found in the
inquiry whether the will expresses an intent to give
the three beneficiaries, Frederick, Ella and Emma,
named in the tenth section, a home generally out of
this property (or its proceeds) or, on the other hand,
an intent to give them only the use of the old home
itself during their lives, or so long as they choose to
occupy it.

The learned circuit judge found in favor of the
latter construction. The other side then appealed to
the supreme court in the ordinary way.

It appeared at the trial that the testator at the time
of his death (March 26th, 1892) occupied as a residence
and homestead a house and lot on the corner of Ken-
nett Place and Mississippi avenue, near Lafayette
Park, in St. Louis; that five of his eight children,
to-wit: Otto, Joseph, Arthur, Alice, and Clara, had
married before testator's death, and were not living on
said premises, while Frederick, Ella, and Emma, all

adults, were living with their father at the time of his death, and were residing in the homestead at the time of the trial.   The three children last named are those mentioned in the tenth clause.   That clause or section and the nineteenth contain (as all parties concede) the language which has given the trustees their difficulty, and which the courts are called upon to aid them to construe.

1.   Such a bill in equity is undoubtedly maintainable by testamentary trustees to settle questions such as that before us, involving reasonable grounds for doubt and uncertainty on their part as to the execution of their trust.   27 A. & E. Encycl. L. (1st ed.) *"Trusts and Trustees,"* p. 151.

2.   The sound interpretation to be given a will is that which truly unfolds the intention of the testator as expressed within the four corners of the instrument. In getting at that intent it is not permissible to introduce outside testimony of declarations, etc., to show the mental purpose or design of the testator on the point of controversy.   If he was so unfortunate as to intend one thing, and yet declare the opposite by the terms of his formal and final expression of intent, then the latter must ordinarily control.   At least, there is nothing before us in the case at bar to prevent the application of that rule.   So the learned trial judge was right in rejecting the testimony tendered to show the personal intent of the testator, on the point of the present controversy, as distinguished from the intent which the will exhibits on that point.

3. The general power to sell, etc., and to re-invest, as given by the nineteenth clause or section of the will, does not indicate any intent to sanction or permit a sale of the homestead for re-investment in other similar property to be used as a home by Frederick, Emma, and Ella in lieu of the old homestead.   Their present

interest in equity in that property certainly amounts to nothing greater than a qualified life estate. That sort of a limited estate (and it is not needful to attempt any more specific classification of it) certainly was not designed by section nineteen to be the subject of sale and re-investment by the trustees at the mere election of Frederick and his two sisters. After the expiration of the use of the old homestead (by the three children named) that property is to be sold and the proceeds divided among all the children, according to the closing lines of the tenth clause. That provision plainly discloses that the homestead is not one of the "particular properties set apart" to any of the several children, as described in the nineteenth clause.

There is nothing inconsistent between the execution, exactly as written, of the plan laid down by section 10 as to the homestead, and the due execution of the powers conferred by the nineteenth section. Wide and general expressions of a purpose or a power in such an instrument are not to be understood as applicable to special facts and circumstances of a particular property the disposition of which is minutely provided for by another clause of the instrument. We must not wholly eliminate section 10 in considering section 19.

The primary and definite intention as to the homestead is found in the tenth section, and there is nothing elsewhere in the will that manifests a different purpose as to that property.

One rule of great force in solving the difficulties of interpretation is that all parts of an instrument should be read so that they shall stand rather than that any part should perish by construction. And to give effect to all parts, the general words of one part may sometimes require to be limited in their application.

In the case at bar one of the beneficiaries under the tenth section had a specific house given her by the

ninth section which also recited that another benefi-
ciary under the tenth section had already received a
like house by deed of gift during her father's lifetime.
The re-investments authorized by section nineteen
were surely not intended to give Emma or Ella other
houses in lieu of the homestead in which they were
privileged to reside.   There is nothing in that section
inconsistent with the provisions of the tenth section
which intended, we think, to give a license to the three
children mentioned to remain in the old home during
life, or so long as they elected to do so.

7. The trial court excluded offers of testimony de-
signed to show that the homestead property had de-
preciated since the testator's death; what were the in-
comes (at the time of the trial) of the three benefi-
ciaries named in the tenth section; what was the cost
of maintaining the property as a home; and what par-
ticular affection the father exhibited to his other
children.

All those offers were excluded, and the several
rulings are assigned as errors.

It is often useful to bring into view, as an aid to con-
struction of any doubtful passage in a will, the circum-
stances of the testator, so that the court may have the
light afforded by the situation in which he was placed
when he expressed himself in the document.    But
there can be no error in excluding such evidence
when there is really nothing doubtful to construe in the
paper, so far as concerns some controverted point.

Indeed it is very questionable whether any of the
offers above mentioned would be admissible, as within
the scope of the general rule above stated.   Perhaps
the item as to his affection for his children might be
held a ''circumstance'' of the making of the will; but
we fail to see how its exclusion could be in any wise
important or harmful in its bearing on the rights of

the appellants. Affection for all his children is plainly manifest throughout the will, and all differences in his gifts to them are explained, directly or inferentially, as justified by his prior dealings toward them, or by the circumstances in which they were placed at the time the will was drawn. There was no prejudicial error (that we recognize) in the exclusion of any of those offers of proof.

8. Each will is to a great extent its own interpreter for all the canons of construction are merely aids to reach the true intent of the whole document itself.

9. We consider that the learned trial judge in the case at bar took a correct view of the meaning of the will. Accordingly the judgment is affirmed. BRACE, C. J., and MACFARLANE and ROBINSON, JJ., concur.