JERRY C. C. ADAMS and NORMAN L. ADAMS, Respondent, v. THE CONQUEROR TRUST COMPANY, a Corporation, FANNIE BRANHAM, GLADYS SHELBY, and W. E. SPIVA, JR., Defendants, FANNIE BRANHAM, Appellant.—No. 40736.—217 S. W. (2d) 476.

Division One, January 7, 1949.

Rehearing Denied, February 14, 1949.

*Watson, Richart & Titus, Ray E. Watson, F. H. Richart, Rex B. Titus* for appellant.

.764

*Scott, Scott & Blair* for respondents.

[477] BRADLEY, C.—This is an action to construe the will of Edward J. Spiva, deceased. The controversy is between plaintiffs (respondents) and defendant Fannie Branham. The trial court construed the will in accord with the construction sought by plaintiffs and defendant, Fannie Branham, appealed. The amount in dispute gives the supreme court jurisdiction of the appeal. Hereinafter, unless otherwise noted, the term appellant has reference to defendant Fannie Branham.

The will was executed May 14, 1926; testator died September 25, 1926, survived by his widow, Jennie Spiva, and collateral kin. The widow died February 10, 1946. Respondents are nephews of the testator and appellant is a sister of the widow. Defendants Gladys Shelby and W. E. Spiva, Jr. are the niece and nephew of the testator; defendant Conqueror Trust Company was trustee under the will. The cause was filed July 20, 1946. At the time of the execution of

the will and at the time of his death, testator owned 56 shares, par value $100 per share, of the common stock of E. I. du Pont de Nemours & Company, a Delaware corporation. The stock was evidenced by two certificates, one for 16 shares, the other for 40. Testator bequeathed 20 shares of the du Pont stock to each of respondents, and the question is whether this bequest is a general or special bequest. Respondents contend that it is special; appellant contends that it is general. The will, omitting the preliminary and witness paragraphs, is as follows:

"Article I. I direct that all my just debts allowed in the due course of administration and the expense of my interment be promptly paid.

"Article II. I give and bequeath to Jennie Spiva, my wife, as her absolute property, all household goods, books, apparel, jewelry and all other like contents of our home.

"Article III. All the rest, residue and remainder of my estate, of whatever nature and wheresoever situate, I give, devise and bequeath to my trustee hereinafter named, in trust for the following uses and purposes:

"First: To pay the net income therefrom, in monthly or quarterly installments, to my wife, Jennie Spiva, for the term of her natural life.

"Second: Upon the decease of my wife, deliver to Jerry C. C. Adams and Norman L. Adams, sons of my sister May Adams, of Joplin, Missouri, each twenty shares of common stock of the E. I. du Pont de [478] Nemours & Company, completely discharged from the operation of this trust. The surviving child or children of either of said sons in this paragraph named shall take the same share and at the same dates as the deceased child would have received such share, if living.

"Third: At the death of my wife and after delivery of the forty shares of common stock of the E. I. du Pont de Nemours & Company, as provided for in the preceding paragraph, all the then remaining portion of my estate shall be distributed in such manner as my wife, Jennie Spiva, may direct in her last will and testament.

"Fourth: The trustee shall hold and manage the property as a trust fund; invest and reinvest the same in real estate mortgages, municipal bonds or any other form of income bearing property (but not real estate nor common corporate stock). The trustee is granted full power to sell, lease, mortgage, exchange or otherwise dispose of any or all of the property in the trust fund as it may deem proper. It may employ counsel and other agents in the discharge of its duties and determine and pay to them reasonable compensation.

"Fifth: The trustee in making distribution of principal hereunder, may do so in money, securities or other property and the judgment of the trustee as to what shall constitute a just and proper division

or apportionment among beneficiaries shall be binding and conclusive on all parties.

"Sixth: No title in the trust estate hereby created or in the income accruing therefrom or in its accumulations shall vest in any beneficiary, and no beneficiary shall have the right or power to transfer, assign, anticipate or encumber his or her interest in said estate or the income therefrom prior to the actual distribution thereof by said trustee to said beneficiary, and neither the income nor principal shall be liable in any manner in, the possession of the trustee for the debts, contracts or engagements of any of the beneficiaries. No beneficiary shall be permitted to appoint any agent or attorney in fact, except as may be specifically permitted by the trustee, to collect or receive such income or principal if such agent or attorney in fact has directly or indirectly advanced any of such income or principal to such beneficiary.

"Article V. This will has been carefully planned by me and it is my deliberate judgment that all of its provisions are wise and just and that the plan as a whole will prove beneficial and satisfactory to my wife and family. It is therefore my desire that my wife assent to this will and cooperate with this plan which I am confident will work to the advantage and welfare of herself and of the family as a whole.

"Article VI. I hereby nominate and appoint The Conqueror Trust Company of Joplin, Missouri, and my wife, Jennie Spiva, as co-executors of this my last will and testament; and I hereby nominate and appoint The Conqueror Trust Company of Joplin, Missouri, as trustee hereunder, with full power to said trustee to sell and convey, lease or mortgage any and all real estate of which I may die seized, without license or leave of court, and I direct it to do each and every act and thing necessary or proper to the full and complete administration of the trust hereby created." (There is no article IV in the will as it appears in the record.)

Shortly prior to testator's death, the du Pont Company commenced proceedings which resulted in a corporate structure change respecting its stock. Notices of a stockholders' meeting for such purpose, to be held on September 13, 1926, were sent out in August, 1926; testator received copy of the notice. The stockholders' meeting resulted in the change of the authorized common stock from 1,500,000 shares of the par value of $100 per share to 5,000,000 shares of common stock of no par value. Under this change, one share of the $100 par value common stock could be exchanged for 2 shares of the no par value common stock. After this change of the corporate structure as to stock the trustee under the will exchanged the 56 shares of $100 par value common stock for 112 shares of the no par value common stock. Later, the stock structure of the du Pont Company was again changed from no par value common stock to common stock having a par value

of $20 per share. Under this second change, one [479] share of the no par value common stock could be exchanged for 3½ shares of the $20 par value common stock. After the second corporate structure change as to common stock, the trustee exchanged the 112 no par value shares for 392 shares of common stock of the par value of $20 per share. At the time of testator's death (September 25, 1926), one share of the du Pont common stock of the par value of $100 was worth $125.50. At the time of the widow's death (February 10, 1946), one share of the $20 per share value common stock was worth $193.00. In other words the 40 shares of common stock bequeathed to respondents and worth $5,020.00 ($125.50 per share) at the time of testator's death, were, by the change in the corporate structure and the two exchanges, changed into 280 shares worth $54,040.00 ($193.00 per share) at the time of the death of the widow.

Jennie Spiva, widow of the testator, and who by his will (subdivision third of article II) was given the power of appointment, executed her will July 30, 1943, and died, as stated, February 10, 1946. By her will, after making certain bequests, she gave the residue of her estate to her sister, Fannie Branham, appellant. Respondents contend, as stated, that the bequest of the 40 shares to them was a specific bequest and that the 280 shares, derived from the 40 shares held by the testator at the time of his death, were obtained by the two exchanges for their benefit and that the 280 shares are a mere subsitution for the original 40 shares, and that they, respondents, were entitled to receive the 280 shares upon the death of the widow. On the other hand appellant contends, as stated, that the bequest of the 40 shares was not a specific bequest, but was a general bequest, and that respondents are only entitled to receive 40 shares (20 shares each) of the 392 shares of the du Pont common stock held by the trustee at the time of the widow's death, together with accumulated dividends thereon after her death. The difference, in money value, between these two contentions is $46,320.00.

The primary rule for the construction of wills is to determine the "true intent and meaning of the testator." Sec. 568 R. S. 1939, Mo. RSA, Sec. 568; Bates et al. v. Bates et al., 343 Mo. 1013, 124 S. W. (2d) 1117, l. c. 1119, and cases there cited; Mercantile Commerce Bank & Trust Co. v. Morse et al., 356 Mo. 179, 201 S. W. (2d) 317, l. c. 319; Graves v. Graves et al., 349 Mo. 772, 163 S. W. (2d) 544, l. c. 546. When all is not entirely clear certain auxiliary rules of construction may be invoked, and among such is the rule that the court will consider the amount, nature, extent and condition of the testator's property. In re Bernheimer's Estate, 352 Mo. 91, 176 S. W. (2d) 15, l. c. 20; Gardner v. Vanlandingham et al., 334 Mo. 1054, 69 S. W. (2d) 947, l. c. 949.

The general rule is that a mere bequest, and no more, of a stated number of shares of stock of a particular corporation is to be

regarded as general or demonstrative bequest rather than a specific bequest. 57 Am. Jur., Wills, Sec. 1411. There is authority, however, supporting the view that where the amount or number of the securities bequeathed corresponds exactly with the amount or number owned by the testator, the bequest is to be construed as specific. 57 Am. Jur., Wills, Sec. 1411, supra; 6 ALR, note, p. 1379; Unitarian Soc. v. Tufts, 151 Mass. 76, 23 N. E. 1006.

In the present case, when all the provisions of the will are considered together it is reasonable to infer that the testator, when he executed his will, intended to bequeath to plaintiffs the 40 shares of du Pont common stock represented by his stock certificate for exactly 40 shares of this stock. Facts supporting such inference are: (1) That he then owned 40 share of the du Pont common stock evidenced by a separate stock certificate for exactly 40 shares; (2) by article III, subdivision second, he bequeathed the 40 shares of du Pont stock and other property to the trustee with direction to pay the net income therefrom to his (testator's) wife for life; (3) while the trustee was given the power (subdivision fourth of article III of the will) "to sell, lease, mortgage, exchange or otherwise dispose of any or all of the property in the trust fund", and to invest and reinvest "in real estate mortgages, municipal bonds or any other form of income bearing property", nevertheless [480] the trustee was specifically directed not to invest in "real estate nor common corporate stock"; (4) that upon the death of testator's wife the trustee was directed (subdivision second of article III of the will) to deliver to plaintiffs, 20 shares each of the common du Pont stock completely discharged from the operation of the trust created; (5) he further directed (subdivision third, article III of the will) that after delivery of said stock to plaintiffs, the remaining portion of the estate be distributed as might be provided in his wife's will.

The fact that the trustee was forbidden to invest in any "common corporate stock" is not without significance. As appears, supra, the trustee was given power to sell, etc., yet the trustee was directed, upon the death of testator's wife, to deliver 20 shares of the common du Pont stock to each of plaintiffs. As we construe the will, had the testator, prior to his death, sold the 40 shares of his du Pont stock, evidenced by the 40 shares certificate, the legacy of the 40 shares of said stock to plaintiffs would have been extinguished under the rule of ademption. In Fidelity National Bank & Trust Co. v. Hovey, 319 Mo. 192, 5 S. W. (2d) 437, l. c. 441, 73 ALR 1228, 28 RCL, Sec. 341, p. 345, is quoted with approval as follows: "The distinctive characteristic of a specific legacy is its liability to ademption. If the identical thing bequeathed is not in existence, or has been disposed of, so that it does not form a part of the testator's estate, at the time of his death, the legacy is extinguished or adeemed, and the legatee's rights are gone."

772

The case of In re Estate of Largue, 267 Mo. 104, 183 S. W. 608, is, we think, in point here. Mathilda A. Largue of St. Louis executed her will July 6, 1909, and died October 9, 1909. At the time of the execution of the will and at the time of her death she owned 510 shares of the stock of the National Bank of Commerce, St. Louis. The will disposed of 318 shares of this stock, referring to it as "stock of the National Bank of Commerce in St. Louis." The second paragraph of the will bequeathed 100 shares of said stock to her brother; the *third* paragraph bequeathed 137 shares to her sister; the *fourth* paragraph bequeathed 136 shares equally to 4 of her nieces. The fifth paragraph bequeathed 46 shares to the trustee named in the will with the direction that he or his successor "keep said shares of stock and collect such dividends as may be paid thereon and pay the same as they are collected to" five named individuals "share and share alike." The sixth paragraph bequeathed 46 shares to six named individuals "share and share alike"; the *seventh* paragraph bequeathed 45 shares to a named individual; the eighth paragraph bequeathed $1,000 to a named individual; the ninth paragraph also bequeathed $1,000 to a named individual; the tenth paragraph devised and bequeathed the residue of the estate to a niece not theretofore named.

The case of In re Estate of Largue was commenced in the probate court. The plaintiffs were the named legatees in the *third, fourth* and *seventh* paragraphs of the will; the defendants were the executors under the will. The plaintiffs claimed that they were the owners of the 318 shares of stock mentioned in the *third, fourth,* and *seventh* paragraphs of the will; that these were *specific* bequests, and that they were entitled to receive the dividends paid on the 318 shares which dividends had been paid to the executors, but not distributed. The aggregate amount of dividends paid on the 318 shares and received by the executors was $8,586.00. The probate court and the circuit court held that the bequests in paragraphs third, fourth, and seventh were general and not specific, and that plaintiffs were not entitled to receive such dividends. It was held by this court that these bequests were specific; that such was the intention of the testatrix, and that the plaintiffs were entitled to the dividends claimed. That conclusion was reached by a consideration of the provisions of the will, together with the pertinent facts and circumstances obtaining at the time of its execution.

In the Largue case, supra, these facts were pointed out as indicative that the testatrix intended to make specific bequests in paragraphs *third, fourth,* and *seventh* of her will: (1) That at the time she executed her will she owned the number of [481] shares (318) of the named bank, which shares she bequeathed to the named legatees; (2) that she owned and was in the possession of the same shares at the time of her death; (3) that by the fifth paragraph (not directly involved in the case) of her will she bequeathed 46 shares of stock in

said bank to a named trustee to be held by him with direction to pay the dividends thereon to a named individual for life and at the death of this individual the 46 shares went equally by the will to five named persons; and (4) that there was nothing in the will to indicate that the testatrix intended to *adeem* any portion of said bank stock or to require her executors to go into the market and buy stock of any kind. In the present case the trustee was directed not to buy any corporate stock. See also Fidelity National Bank & Trust Co. v. Hovey, supra; Waters v. Hatch et al., 181 Mo. 262, l. c. 288, 79 S. W. 916; In re Calnane's Estate (Mo. App.), 28 S. W. (2d) 420. In the present case the testator, at the time of the execution of his will and at the time of his death, owned and was in the possession of the 40 shares of the du Pont stock which he bequeathed to plaintiffs, and in view of the fact that he, at the time, owned 40 shares of this stock evidenced in a separate stock certificate, it is reasonable to infer that he intended by his will to bequeath these identical shares to plaintiffs, and the fact that the exchanges of stock were made by the trustee should not operate to destroy the identity of this stock. The stock bequeathed to plaintiffs became a part of an active trust created by the will, and the trustee was directed, upon the death of testator's wife, to deliver to each of plaintiffs 20 shares of said stock completely discharged from the trust. The proportional interest of each stockholder in the du Pont Company remained the same after the exchanges as before. The identity of the stock was substantially preserved. Hayes et al. v. St. Louis Union Trust Co. et al., 317 Mo. 1028, 298 S. W. 91, l. c. 97 (10-11); Robert et al. v. Mercantile Trust Co. et al., 324 Mo. 314, 23 S. W. (2d) 32, l. c. 43; Chase National Bank et al. v. Deichmiller et al., 107 N. J. Eq. 379, 152 Atl. 697; In re Hinners' Will, 216 Wis. 294, 257 N. W. 148.

It is contended that the general power given the trustee to sell, invest, reinvest, etc. as provided in subdivision *fourth* of article III, and as to what the trustee might do in making the distribution as provided in subsection *fifth* of article III suggested that the testator did not intend the bequest of the 40 shares to be a specific bequest. But when subsections *second* and *third* of article III are read in connection with subsections *fourth* and *fifth*, it cannot be fairly said that the testator intended that the trustee have the power to sell the 40 shares bequeathed to plaintiffs. One rule of great force in solving the difficulties in the construction of a will is that all parts of the will "should be so read that they shall stand rather than that any part should perish by construction." Mersman et al. v. Mersman et al., 136 Mo. 244, l. c. 257, 37 S. W. 909. See also, Scott et al. v. Fulkerson et al., 332 Mo. 734, 60 S. W. (2d) 34, l. c. 36 (5); Broaddus et al. v. Park College et al., 238 Mo. App. 304, 180 S. W. (2d) 268, l. c. 273 (9); Malone v. Moberly et al. (Mo. App.), 55 S. W. (2d) 1008, l. c. 1009 (2, 3).

774

The trial court, we think, correctly ruled that the bequest of the 40 shares of the du Pont common stock was a specific bequest and the judgment should be affirmed. It is so ordered. *Dalton* and *Van Osdol, CC.,* concur..

PER CURIAM:—The foregoing opinion by BRADLEY, C., is adopted as the opinion of the court. All the judges concur.